## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Frankel Homes Ltd. d/b/a Frankel Design Build<br><br>                  Plaintiff,<br><br>    vs.<br><br>Brickmoon Design LLC, Country Builders, Inc. d/b/a Picklo Homes, Justin Patterson, and Kristen Patterson<br><br>                 Defendants. | CASE NO.<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND UNFAIR COMPETITION** |

### COMPLAINT FOR COPYRIGHT INFRINGEMENT

Plaintiff Frankel Homes, Ltd d/b/a Frankel Design Build ("Frankel"), on behalf of itself and no other, hereby alleges as follows:

### JURISDICTION AND PARTIES

1.      This is an action for copyright infringement under the Copyright Act of 1976, Title 17 U.S.C., §§ 101 et seq. and the Lanham Act, 15 U.S.C. § 1125(a), as hereinafter more fully appears.

2.      This court has jurisdiction under 28 U.S.C. §§ 1331, 1338(a), and 1338(b). The claims asserted herein arose in this judicial district and all Defendants reside and/or regularly do business in this judicial district. Venue in this judicial district is proper under 28 U.S.C. §§ 1391(c) and 1400(a) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

3.      Plaintiff is a Texas limited liability company, with its principal place of business at 7800 Washington Ave #200, Houston, TX 77007.

4.      Upon information and belief, Defendant Brickmoon Design LLC ("Brickmoon"), is a Texas limited liability company with its principal place of business at 1438 Campbell Rd #202, Houston, TX 77055, and employs Defendant Justin Patterson.

5.      Upon information and belief, Defendant Country Builders, Inc., d/b/a "Picklo Homes" ("Picklo Homes") is a Texas corporation, with its principal place of business at 19550 Indigo Lake Dr., Magnolia, TX 77355.

6.      Upon information and belief, Defendants Justin Patterson and Kristen Patterson (collectively, the "Pattersons") are spouses residing at 7327 Magnolia Hollow Drive, Montgomery, TX 77316 ("Infringing Residence").

## BACKGROUND

7.      Frankel is a family-owned and operated, award-winning custom design-build firm located in Houston, Texas.

8.      Frankel offers in-house expertise on architectural design, construction, interior design, pools and outdoor living services.

9.      In or around June 2019, Frankel's Senior Building Designer and Creative Director Rodney Stevens, along with Frankel's team of designers, created a one-of-a-kind home design that they named "Caruthers."

10.     The Caruthers Design was revealed to the industry in August 2020, and instantaneously lauded, winning Frankel awards including Best in American Living[1] and National Association of Home Builders (NAHB) Custom Builder of the Year for 2021.[2]

11.     The awards bestowed on Caruthers significantly raised Frankel's profile within the industry both locally and nationally.

12.     Frankel is one of the most well-known and highly-regarded design build firms in the Greater Houston Area.

13.     Plaintiff is the author of and owns all copyright in and to the Caruthers Design, which is duly registered with the U.S. Copyright Office as an architectural work, Registration No. VAu001510303.

14.     The photograph of the distinctive front elevation of the Caruthers Design shown below has served as the "face" of Frankel's brand for the last several years.



---

[1] *See* https://bestinamericanliving.com/awards/caruthers-lane/
[2] *See* https://ghba.org/frankel-building-group-wins-nahb-custom-builder-of-theyear/#:~:text=Congratulations%20to%20local%20GHBA%20member,highest%20honors%20in%20our%20industry

15.     Frankel maintains a popular Instagram account, which Defendant Brickmoon followed up until its receipt of Frankel's cease and desist letter related to the instant action.

16.     Frankel's Instagram account frequently posts images showing the Caruthers Design for the purpose of advertising and promoting Frankel's services, including, but not limited to, in the following posts by Frankel:

**August 15, 2020 Instagram Post**

**https://www.instagram.com/p/CD6PMW3phBl/**



**November 19, 2020 Instagram Post**

**https://www.instagram.com/p/CHyg-T0p48V/?img_index=1**



17.    Other popular Instagram accounts have also featured photographs of Caruthers, including the following:

**Instagram Feature** **https://www.instagram.com/p/Chf8RfbJV8e/?img_index=1**



**Instagram Feature** **https://www.instagram.com/p/CZ9YOhTNQAy/?img_index=1**



**Instagram Feature** **https://www.instagram.com/p/CZEMF7gr0vY/?img_index=1**



18.    Brickmoon also follows Frankel's photographer, Kerry Kirk, on Instagram.



19.    Ms. Kirk also has featured her photographs of Caruthers on her Instagram page.

**Instagram Feature [https://www.instagram.com/p/CH5Zi59BowQ/](https://www.instagram.com/p/CH5Zi59BowQ/)**



20.    Featuring Caruthers on Instagram grew Frankel's following from under 10,000 to over 20,000 users, and the photos of Caruthers' front elevation were some of the first to reach over 1,000 likes.

21.    With each Instagram post featuring Caruthers, commenters clamor for the building design plans, naming it "gorgeous," "beautiful," and "stunning."

22.    The success and popularity of the Caruthers home design took Frankel to the next level and helped grow the company to what it is today.

23.    Frankel cultivates a reputation for providing customers with unique, custom home designs.

24.     Because Frankel both designs and builds custom homes for its clientele, Frankel carefully controls dissemination of its design plans, and reserves its designs for exclusive use by Frankel for Frankel customers, and thus profits from both the design and the build of the house.

25.     Each and every copy of the Caruthers Design, both photos and plans, is accompanied by clear indications that the Caruthers Design is the property of Frankel.

26.     The Caruthers Design is well-known in the Greater Houston residential construction industry due to the awards it has received and other public kudos bestowed on the design, as well as Frankel's well-known and well-regarded reputation in the industry.

27.     The Caruthers Design and, in particular, Caruthers' distinctive front elevation, has become a recognizable symbol of Frankel and its high-quality services.

28.     Upon information and belief, the Defendants, each of them, were repeatedly exposed to depictions of Caruthers prior to their conception, design, and construction of the Infringing Residence.

29.     In September 2023, a third party reached out to Frankel, asking about its association with the Infringing Residence given the close similarities in the design, as shown below.



30.     Upon further investigation, Frankel discovered that the Infringing Residence was purportedly designed by Brickmoon, built by Picklo Homes, and owned by Brickmoon's "Design Director," Justin Patterson and his Realtor® spouse, Kristen Patterson.

31.     The Infringing Residence is a discount version of Caruthers.

32.     Although the Infringing Residence was purportedly designed by Brickmoon and built by Picklo Homes, it is clearly derived from Frankel's well-known Caruthers Design, even down to the placement of the two groups of trees in the front yard and two coach lights on either side of the front door.





33.     Defendants appear to have moved some of the Caruthers Design elements around and made adjustments to account for lot size and placement as well as cost-saving measures, but the Infringing Residence is clearly recognizable as derived from Caruthers.

34.     Customers exposed to Defendants' copycat residence could question Frankel's reputation for uniqueness and its ability to create one-of-a-kind designs, and impute Defendants' cost-saving measures that detract from the Caruthers Design to Plaintiff.

35.     Defendants purposefully tried to copy the original expression found in the Caruthers Design.

36.     In addition to the design elements Defendants copied, as set forth below, Defendants' intent is further shown by those elements it tried to, but could not copy.

37.     By way of example, Plaintiff is informed and believes and thereon alleges that Defendants had planned to include a white paint or wash of the exterior brick of the Infringing Residence (to match the Caruthers Design) but were thwarted by its homeowner's association from doing so.

38.     The white wash used on the exterior of the Caruthers Design is a specific design choice, and adds significant construction cost.

39.     The only purpose for Defendants' attempted use of the white paint or wash exterior was to hew even more closely to the overall look of the Caruthers Design.

40.     Each of the Defendants participated in the creation of the Infringing Residence.

41.     Each of the Defendants had the right and the ability to supervise the design and build of the Infringing Residence.

42.     Each of the Defendants financially benefitted, directly or indirectly, from their respective role in the design and build of the Infringing Residence.

43.     Upon information and belief, each of the Defendants had been exposed to the Caruthers Design prior to their design and build of the Infringing Residence.

44.     Upon information and belief, as a home designer and a real estate professional, the Pattersons were well-aware of the restrictions copyright law places on the copying of residential home designs.

45.     As a professional architecture firm (employing licensed architects), Brickmoon is well-aware that copyright protection extends to building designs in the United States.  *See, e.g.*, 17 U.S.C. §106.

46.     Brickmoon is particularly well-informed of the limitations copyright law places on its ability to replicate designs of others because it was sued for copyright infringement in the past, and was subject to a temporary restraining order as a result.  *See Creole Design, LLC v. Smith Family Homes, LLC et al.*, Civil Action No. 4:16-cv-02200 (S.D. Tex.) (alleging copyright infringement and conspiracy related to Brickmoon's unauthorized use of another architect's plan designs).

47.     The Brickmoon team includes a number of members of the American Institute of Architects ("AIA"), which sets clear standards for its members on the issue of taking credit for someone else's design, stating "Architecture is a profession in which design capability is prized and intellectual property is the most common proof of worth, in terms of talent and experience."

48.     Namely, AIA Ethical Standard 5.3, Professional Recognition, states "Members should build their professional reputation on the merits of their service and performance and should recognize and give credit to others for the professional work they have performed."

49.     The AIA Rules of Conduct ("AIA Rules") require "Members shall not make misleading, deceptive or false statements or claims about their professional qualifications,

experience or performance and shall accurately state the scope and nature of their responsibilities in connection with work for which they are claiming credit." AIA Rule 4.201.

50.     AIA Rule 5.301 further demands that "Members shall recognize and respect the professional contributions of their employees, employers, professional colleagues and business associates."

51.     Upon information and belief, as a construction firm that deals daily with construction plans and architectural drawings, Picklo Homes was well-aware of the restrictions copyright law places on the copying of residential home designs.

52.     Upon information and belief, each Defendant participated in the infringement with the goal of using the Infringing Residence in the future as a showplace for their skills in order to gain clientele.

53.     Upon information and belief, each Defendant has used the Infringing Residence as a showplace for their skills in order to gain clientele.

54.     For example, Picklo Homes featured the Infringing Residence on its Facebook page, as depicted below, telling its customers and prospective customers "We cannot wait to share the final result of this stunning home."



55.     The Infringing Residence is substantially similar to the Caruthers Design.

56.     The most distinctive feature of the Caruthers Design copied by Defendants is the inset center portion placed between two light colored brick gabled wings, because placing what is essentially a blank space with irregularly-spaced windows in the center of the design, where the eye is most likely to be drawn first, is counterintuitive.

**Inset Paneled Center Portion**



57.     As shown above, both designs feature this inset center portion with five similarly-sized windows spaced closely together on the upper floor and two larger, offset six-light windows at ground level, with a standing seam metal shed roof separating the levels.

58.     Defendants copied even the placement and proportions of the block paneling, including a wide central panel between the two offset windows.

59.     The paneling and trim of both houses also appear to be a dark brown, which contrasts with the light brick facing.

60.     Both Caruthers and the Infringing Residence also feature two light brick-faced gabled wings, shown below.

**Light Brick Gabled Wings**

 

61.     Those similar features include an upper, box-like bay window trimmed with block

paneling on the top level having three decorative wood brackets at the bottom, as shown below.

**Bay Windows**

 

62.     The bottom level window of the same wing includes an inset paneled window, with

paneling reaching to the foundation, and an inset decorative wood header, as shown below.

**Bottom Window**

 

63.     The light brick-faced gabled wings have identical-looking roof pitches but, because the ceiling heights of the Infringing Residence at the entrance are not as lofty as the Caruthers Design, Defendants adapted the Caruthers Design elements to allow for a short ceiling height, as shown below.  Specifically, Defendants lifted another design feature chosen for the Caruthers Design, an inset window with inset decorative wooden trim, as shown below.

**Ceiling Height Adaptation**



64.    In both Caruthers and the Infringing Design, another wing with three large transom windows lies adjacent to one of the brick-faced gables.

**Transom Windows**



65.     As demonstrated herein, the Infringing Residence slavishly copies the most distinctive feature of the Caruthers Design, as well as Plaintiff's selection and placement of other features, dimensions, stylistic choices, and materials.

66.     As a participant in the Greater Houston residential construction industry, Defendants (each of them) were made aware of the Caruthers Design due to the high profile earned by the design over the past few years, and of its association with Frankel.

67.     The third party who notified Frankel regarding the Infringing Residence made the connection between Frankel and the Infringing Residence immediately.

68.     As Mr. Patterson's employer and as the source of record of the infringing design, Brickmoon is responsible for the infringement that occurred under its auspices.

69.     Defendants' infringement extends to the confusion created in the market when people assume that the Infringing Residence is a Frankel build and/or design.  By copying Frankel's most well-known design in a manner that creates a likelihood of confusion, Defendants unfairly competed with Frankel in violation of 15 U.S.C. §1125.

## COUNT I
## COPYRIGHT INFRINGEMENT - 17 U.S.C. §101 *et seq.*
### (against all Defendants)

70.     Plaintiff re-alleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

71.     Plaintiff owns a valid copyright in and to the Caruthers Design.

72.     The Caruthers Design is the subject of Copyright Registration VAu001510303, which registration is valid and enforceable.

73.     Defendants had access to depictions of the Caruthers Design pursuant to their involvement in the Greater Houston residential construction community, including but not limited to their social media activity.

19

74.     Defendants were not authorized to make derivative works of, make copies of, or otherwise use the Caruthers Design without Plaintiff's express permission.

75.     Defendants created, altered, offered for sale, caused to be publicly displayed, and sold products bearing a derivative of the Caruthers Design without Plaintiff's permission.

76.     Due to Defendants' acts of infringement, Plaintiff has suffered substantial damages to its business in an amount to be established at trial.

77.     Due to Defendants' acts of infringement, Plaintiff has suffered general and special damages in an amount to be established at trial.

78.     Due to Defendants' acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the Caruthers Design.  As such, Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of the Caruthers Design in an amount to be established at trial.

## COUNT II
## FEDERAL UNFAIR COMPETITION AND
## TRADEMARK INFRINGEMENT - 15 U.S.C. §1125
### (against all Defendants)

79.     Plaintiff re-alleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

80.     Plaintiff has offered and sold its award-winning custom design-build services using depictions of the Caruthers Design continuously in United States commerce for more than three years.

81.     Depictions of the Caruthers Design have come to be recognized as indicating the source of Plaintiff's custom design-build services.

82.     The Caruthers Design has repeatedly been used as an exemplar of Plaintiff's custom design-build services and, thus, has come to be associated with Plaintiff such that houses bearing the Caruthers Design are recognizable as emanating from Plaintiff (the "Caruthers Design Mark").

83.     The Caruthers Design Mark is a valuable trademark that is inherently distinctive and/or has gained secondary meaning such that it distinguishes Plaintiff's goods and services from goods and services of others.

84.     Plaintiff has invested substantial time, effort and financial resources promoting Plaintiff's Caruthers Design Mark in connection with the marketing and sale of services in interstate commerce.

85.     As a result, Plaintiff's Caruthers Design Mark, through widespread and favorable acceptance and recognition, has become an asset of substantial value as a symbol of Plaintiff and its high quality custom design-build services.

86.     The overall look and feel and distinctive aesthetic features of the Caruthers Design are nonfunctional; unlimited alternate designs for residential properties exist.

87.     Notwithstanding Plaintiff's established rights in Plaintiff's Caruthers Design Mark, Defendants adopted and have used the Caruthers Design Mark in connection with their promotional and marketing efforts without Plaintiffs' approval or consent, including featuring the design on Facebook and, upon information and belief, other nationwide social media outlets and/or websites.

88.     Defendants have engaged in these infringing activities despite having actual knowledge of Plaintiff's use and ownership of the Caruthers Design Mark and Defendants' lack of authorization to exploit the Caruthers Design Mark.

89.     Defendants' actions are likely to lead the public to conclude, incorrectly, that the Infringing Residence was approved or authorized by Plaintiff, which false belief has damaged and will continue to damage Plaintiff.

90.     Defendants' unauthorized use of the Caruthers Design Mark in interstate commerce as described above, constitutes trademark infringement and unfair competition under 15 U.S.C. § 1125.

91.     Defendants' actions were willful.

92.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer loss of income, profits and goodwill and Defendants have and will continue to unfairly acquire income, profits and goodwill.

93.     Defendants' acts of infringement will cause further irreparable injury to Plaintiff if Defendants are not restrained by this Court from further violation of Plaintiffs rights.

94.     Plaintiff has no adequate remedy at law.

### REQUEST FOR RELIEF

WHEREFORE, in consideration of the foregoing, Plaintiff respectfully requests that this Court enter an Order granting the following relief:

a.      Entering a judgement that Defendants infringed Plaintiff's valid copyright in and to the Caruthers Design in violation of 17 U.S.C. §101 et seq.;

b.      Entering a judgment that Defendants infringed Plaintiff's Caruthers Design Mark in violation of 15 U.S.C. §1125;

c.      Preliminarily and permanently enjoining and restraining Defendants and each of their agents, employees, officers, attorneys, successors, assigns, affiliates and any persons in privity or active concert or participation with any of them from using the

Caruthers Design and the Caruthers Design Mark and any substantially similar marks to market, advertise, promote, distribute or otherwise identify Defendants' services where that designation would create a likelihood of confusion, mistake or deception with Plaintiff's Marks;

d.      Pursuant to 15 U.S.C. §1116(a), directing Defendants to file with the Court and serve on Plaintiffs within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

e.      Requiring that Defendants and all others acting under Defendants' authority, at their cost, be required to remove, disable and/or destroy, as appropriate, all copies of Plaintiff's Caruthers Design and other material in their possession bearing Plaintiff's Caruthers Design;

f.      Ordering Defendants to account to Plaintiff for, and disgorge to Plaintiff, all profits they have derived as a result of the unlawful acts complained of above;

g.      Awarding to Plaintiff all profits received by Defendants from sales and revenues of any kind made as a result of its infringing actions, said amount to be trebled, after an accounting pursuant to 15 U.S.C. §1117;

h.      Awarding Plaintiff its attorneys' fees and costs pursuant to 15 U.S.C. § 1117 because of the exceptional nature of this case resulting from Defendants' deliberate infringing actions; and

i.      Granting Plaintiff such other and further relief as the Court may deem just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable.


Dated: December 4, 2023                    Respectfully submitted,

                                           */s/Christina J. Moser*
                                           Christina J. Moser
                                           SDTX Bar No. 957582
                                           Baker & Hostetler LLP
                                           Key Tower
                                           127 Public Square, Suite 2000
                                           Cleveland, Ohio 44114
                                           Telephone: (216) 621-0200
                                           Facsimile: (216) 696-0740
                                           cmoser@bakerlaw.com

                                           Nikki Morris
                                           SDTX Bar No. 3257781
                                           Baker & Hostetler LLP
                                           811 Main Street, Suite 1100
                                           Houston, TX 77002
                                           Telephone: (713) 751-1600
                                           Facsimile: (713) 751-1717
                                           nmorris@bakerlaw.com

                                           *Attorneys for Plaintiff Frankel Homes Ltd.*
                                           *d/b/a Frankel Design*